**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| COLLEEN SAGIAS | : | |
| *Plaintiff* | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| OTIS ELEVATOR COMPANY | : | |
| -and- | : | |
| JOHN DOE(S) 1-5, FICTITIOUS | : | |
| DEFENDANT(S) | : | |
| *Defendant* | : | |

**CIVIL ACTION COMPLAINT**

## I.  PRELIMINARY STATEMENT

1.  This is a product liability claim against the Defendant, Otis Elevator Company, for personal injuries caused to Plaintiff Colleen Sagias by the negligent acts and/or omissions of the Defendant.

## II.  PARTIES

2.  Plaintiff, Colleen Sagias, is an adult individual and resident and citizen of the State of New Jersey, residing therein at 33 Karemark Drive, Burlington, NJ 08016.

3.  Defendant, Otis Elevator Company, was and is now a business entity, believed to be a corporation, duly organized and existing under the laws of the State of Connecticut, with a principal place of business located therein at One Carrier Place, Farmington, CT 06032.

4.  Defendant(s), John Does 1-5 (Fictitious Defendant(s)), upon information and belief, are individuals, corporations, and/or entities who owned, operated, controlled, leased, entrusted, inspected, possessed, managed, and/or maintained the subject premises described herein and are therefore responsible for the damages suffered by Plaintiff in the premises liability accident herein described.

1

### III.  JURISDICTION AND VENUE

5.    Jurisdiction is conferred upon this Court by virtue of the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332.

6.    The amount in controversy in this action is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and fees.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts and/or omissions giving rise to the within claims occurred within the district and because Defendant is subject to personal jurisdiction within the district.

### IV.  STATEMENT OF CLAIMS

8.    At all times material herein, Defendants, Otis Elevator Company and John Doe(s) 1-5, Fictitious Defendant(s), acted by and through its agents, servants, employees, workmen and/or other representatives, who were, in turn, acting within the course and scope of their employment, agency, and/or service for the same.

9.    At all times relevant hereto, Defendants, Otis Elevator Company and John Doe(s) 1-5, Fictitious Defendant(s), by and through their respective agents, servants, employees, workmen, and/or other representatives, was regularly engaged in the business of designing and manufacturing elevators for commercial use, including designing, distributing, assembling, marketing, manufacturing, maintaining, providing instructions manuals and warnings for, and/or selling elevators, and any component parts thereto, including the subject elevator, located at Jefferson Frankford Hospital, located at 4900 Frankford Avenue, Philadelphia, PA, 19124, and all the component parts thereto.

10.    At all times relevant hereto, the Defendant designed, distributed, assembled,

2

marketed, manufactured, maintained, repaired, serviced, and/or sold the subject elevator, located at Jefferson Frankford Hospital, located at 4900 Frankford Avenue, Philadelphia, PA, 19124, and the component parts thereto, and all instruction manuals and associated warnings.

11.     On or about December 22, 2024, Plaintiff, Colleen Sagias, was a lawfully acting within the course and scope of her employment at Jefferson Frankford Hospital, located at 4900 Frankford Avenue, Philadelphia, PA, 19124, and had entered an elevator, designed, distributed, assembled, marketed, manufactured, maintained, repaired, serviced, and/or sold by the Defendant, Otis Elevator Company, when suddenly and without warning, the elevator made several jerking movements, abruptly dropped, went up again, and dropped again, before getting stuck, trapping the Plaintiff inside, the drops from which thereby causing her to sustain various severe and permanent bodily injuries and losses as more fully set forth below.

12.     The aforementioned incident was caused by the negligence and carelessness of the Defendant, Otis Elevator Company, and was due in no manner to any act or failure to act on the part of the Plaintiff.

## COUNT I
## COLLEEN SAGIAS v. OTIS ELEVATOR COMPANY
## PRODUCTS LIABILITY – STRICT LIABILITY

13.     Plaintiff hereby incorporates by reference all foregoing paragraphs of the within Complaint as though the same were fully set forth at length herein.

14.     Defendant, Otis Elevator Company, placed into the stream of commerce a defective product that violated the standards created in *Tichner v. Omega Flex*, 104 A.3d, 399 (Pa. 2014). More specifically, the Defendant placed into the stream of commerce a defective product wherein (a) the danger was unknowable and unacceptable to the average or ordinary consumer and/or (b)

3

a reasonable person would conclude that the probability of seriousness and harm caused by the Defendant's defective product outweighs the burden or costs of taking precautions.

15. Defendant, Otis Elevator Company, designed, distributed, assembled, marketed, manufactured, maintained, repaired, serviced, and/or sold the aforementioned elevator and/or its component parts, including all instruction manuals and associated warnings, which caused, at least in part, Plaintiff's injury.

16. The accident described herein was caused solely and exclusively by Defendant's defective design and/or manufacture of the foresaid elevator and its component parts, including but not limited to:

17. Defendant is strictly liable to Plaintiff as follows:

    a. designing, manufacturing, apparently manufacturing, assembling, licensing, distributing, and/or selling the subject elevator and its component parts in a dangerous condition so as to cause injury to the Plaintiff;

    b. designing, manufacturing, apparently manufacturing, assembling, licensing, distributing, and/or selling the subject elevator and its component parts with a defect that caused the machine to operate without adequate safety guards, resulting in two sudden drops, and failing to prevent such hazardous conditions, without adequate warning of the risk;

    c. failing to properly design, manufacture, apparently manufacture, assemble, license, distribute, and/or sell the subject elevator with durable component parts able to withstand normal use and include proper safety guards;

    d. failing to properly design, manufacture, apparently manufacture, assemble, license, distribute, and/or sell the subject elevator and its component parts to include effective and durable safeguard(s) to prevent abrupt movements, which caused Plaintiff's injuries;

    e. failing to properly equip the subject elevator and its component parts with appropriate safety mechanisms, including but not limited to automatic stop mechanisms, and/or other controls to prevent injuries during operation;

    f. failing to properly design, manufacture, apparently manufacture, assemble, license, distribute, and/or sell the subject elevator and its component parts

to warn users of the potential for injury due to the absence of emergency shutoffs or other safety mechanisms;

g. failing to properly design, license, manufacture, and/or apparently manufacture the subject elevator to prevent improper operation and access to hazardous components;

h. creating and allowing a dangerous condition to exist by failing to provide proper safety and operational instructions to end users of its product;

i. failing to exercise the requisite degree of care and caution in the distribution, manufacture, apparent manufacture, assembly, licensing, design, and/or sale of the subject elevator and its component parts;

j. failing to ensure that the subject elevator was safe and free from hidden defects;

k. failing to properly inspect, test, identify, and correct dangerous and defective conditions in the subject elevator;

l. failing to ensure that the subject elevator and its component parts could be used in a manner which would not cause a danger to potential ordinary consumers/users of the product, such as the Plaintiff;

m. failing to warn purchasers and end users of the dangers of the subject product;

n. failing to take timely action to warn end consumers/users or otherwise remedy the defective design, manufacture, and/or assembly of the subject product, which should have been known to the Defendant prior to the date of Plaintiff's accident;

o. failing to use industry-recognized safety specifications in the design and manufacture of the subject elevator;

p. embossing, affixing, and/or otherwise labeling the subject elevator and its component parts with Defendant's name/trademark and/or symbol;

q. allowing the subject elevator and its component parts to be embossed, affixed, and/or labeled and sold with Defendant's name/trademark and/or symbol, which readily identified Defendant as the apparent and/or actual manufacturer of the product;

r. failing to design and equip the subject elevator with safeguards to prevent the foreseeable risk of improper operation or operation-related injuries;

    s.  failing to design the subject elevator with consideration for operator safety, thereby placing operators at risk of injuries during operation;

    t.  failing to integrate or properly integrate safety mechanisms, including physical guards and automatic shut-off features, within the system to prevent operator injuries;

    u.  failing to meet industry-recognized safety standards and specifications in the design, manufacture, and assembly of the subject elevator and its component parts, including safeguards to prevent injuries;

    v.  failing to issue warnings, recalls, or other corrective actions after becoming aware or when they should have become aware of defects in the elevator that posed a risk of injury to users;

    w.  vicarious liability as an apparent manufacturer of the subject elevator and its component parts pursuant to the Restatement (Second) of Torts §400; and

    x.  any other acts or omissions that may be revealed during discovery.

18.    The accident described herein was due in no manner to negligence, wrongdoing, or product misuse on the part of the Plaintiff.

19.    At all times relevant hereto, Defendant's aforesaid elevator and its component parts were defective and unsafe for consumer use.

20.    At all times relevant hereto, there were latent defects in the Defendant's aforesaid elevator and its component parts such that the product's defective condition was unknown to the consumer, therefore rendering the product unacceptable for consumer use.

21.    The Defendant designed, manufactured, apparently manufactured, distributed, licensed and/or sold the aforesaid elevator and its component parts in a defective condition in violation of the Restatement (Second) of Torts §402(A), and those defects were the sole and proximate cause of the Plaintiff's injuries.

22.    Defendant is strictly liable to Plaintiff as a result of the defective condition of Defendant's product.

23. In addition, Defendant designed, manufactured, apparently manufactured, distributed, and sold the subject elevator with inadequate warnings and instructions in violation of the Restatement (Second) of Torts §402(B).

24. In that regard, the warnings and instructions were not adequately durable, visible, or conspicuous and failed to convey the risk of harm to the intended users of the elevator and its component parts, such as the Plaintiff.

25. The inadequate warnings and/or instructions rendered the product defective, unsafe and unfit for consumer use.

26. The inadequate and defective warnings and instructions caused Plaintiff's injuries.

27. Furthermore, Defendant is liable and/or vicariously liable to Plaintiff as an apparent manufacturer of the subject elevator pursuant to the Restatement (Second) of Torts §400.

28. In that regard, as set forth above, the subject elevator involved in Plaintiff's accident was embossed, affixed, and/or otherwise labeled with Defendant's name/trademark and/or symbol.

29. Defendant labeled the subject elevator and/or allowed the subject elevator to be labeled and sold with its name and/or trademark and/or symbol which readily identified Defendant as the apparent and/or actual manufacturer of the product.

30. As such, Defendant could reasonably expect end users and consumers to purchase the subject product in reliance upon the reputation associated with Defendant's name and Defendant put out the subject product as its own product.

31. Defendant is therefore subject to the same liability as though it was the actual manufacturer of the subject elevator pursuant to the apparent manufacturer doctrine and Restatement (Second) of Torts §400 and is vicariously liable for causing Plaintiff's injuries and damages.

7

32.    By reason of the aforesaid negligence of the Defendant, Plaintiff Colleen Sagias has suffered severe and permanent injuries including, but not limited to: cervicalgia; nonunion after arthrodesis; radiculopathy in the cervical region; other spondylosis with myelopathy in the cervical region; right arm pain; acute low back pain laterality, and elevated blood pressure as well as aches, pains, mental anxiety and anguish, and a severe shock to her entire nervous system. Plaintiff has in the past and will in the future undergo severe pain and suffering as a result of which she in the past and will in the future be unable to engage in her usual activities, all to her great detriment and loss.

33.    As a further result of the incident described herein, Plaintiff has been or will be obliged to receive and undergo medical care and attention and to expend various sums of money and to incur various expenses for the injuries which she suffered, and she may be obliged to continue to expend such sums or incur such expenditures for an indefinite period of time in the future.

34.    As a further result of the incident described herein, Plaintiff has suffered or may suffer a severe loss of her earnings and/or earning power, and she may incur such loss for an indefinite period in the future.

35.    Further, by reason of the incident described herein, Plaintiff has incurred and/or may hereinafter incur other financial expenses all in an effort to treat and cure herself of the injuries sustained in the aforesaid incident.

36.    As a further result of the incident described herein, Plaintiff has or may have suffered injuries resulting in the permanent loss of use of a bodily function, dismemberment, and/or scarring, which may be in full or part cosmetic disfigurements which are or may be permanent, irreparable and severe.

37. As a further result of the incident described herein, Plaintiff has suffered a loss of the enjoyment of her usual duties, avocations, life's pleasures and activities, and the shortening of her life expectancy, all to her great detriment and loss.

38. As a further result of the incident described herein, Plaintiff has suffered great physical pain, suffering and mental anguish, all of which may continue into the future.

39. Plaintiff in no manner contributed to her injuries which were the direct and proximate result of the Defendant's negligence and carelessness.

WHEREFORE, Plaintiff, Colleen Sagias, demands judgment in her favor and against Defendant, Otis Elevator Company, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000) together with costs of suit, interest and reasonable attorneys' fees, as well as any such other relief as the Court deems adequate, just and proper.

**COUNT II**
**COLLEEN SAGIAS v. OTIS ELEVATOR COMPANY**
**BREACH OF WARRANTY**

40. Plaintiff hereby incorporates all the foregoing paragraphs of the within Complaint as though the same were fully set forth at length herein.

41. By virtue of the manufacture, apparent manufacture, licensing and/or sale of the aforesaid elevator and its component parts for use by an end user and/or consumer, Defendant warranted to Plaintiff that the subject product was safe, merchantable and fit for its intended use.

42. The subject elevator and its component parts, in fact, was not safe, merchantable, or fit for the ordinary purposes for which it was intended to be used, in that it was defective and unreasonably dangerous, rendering it unsafe for the foreseeable uses for which it was designed. Plaintiff was a foreseeable user of the subject product and could reasonably be expected to be injured by the subject product.

43.    As a result of the foregoing, Defendant is liable to the Plaintiff for the breach of express and/or implied warranties that the subject product and its component parts were merchantable, fit for use, and suitable and fit for its particular purpose under common law and 13 Pa. Cons. Stat. §§ 2314 and 2315.

44.    As a result of the aforementioned conduct of the Defendant, the Plaintiff suffered the injuries described in the foregoing paragraphs, which are incorporated by reference as though fully set forth at length.

WHEREFORE, Plaintiff, Colleen Sagias, demands judgment against Defendant, Otis Elevator Company, in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with any such other relief as the Court deems adequate, just and proper under the circumstances.

**COUNT III**
**COLLEEN SAGIAS v. JOHN DOE(S) 1-5, FICTITIOUS DEFENDANT(S)**
**PRODUCTS LIABILITY – STRICT LIABILITY**

45. Plaintiff hereby incorporates by reference all foregoing paragraphs of the within Complaint as though the same were fully set forth at length herein.

46.    Defendant, John Doe(s) 1-5, Fictitious Defendant(s), placed into the stream of commerce a defective product that violated the standards created in *Tichner v. Omega Flex*, 104 A.3d, 399 (Pa. 2014). More specifically, the Defendant placed into the stream of commerce a defective product wherein (a) the danger was unknowable and unacceptable to the average or ordinary consumer and/or (b) a reasonable person would conclude that the probability of seriousness and harm caused by the Defendant's defective product outweighs the burden or costs of taking precautions.

10

47.     Defendant, John Doe(s) 1-5, Fictitious Defendant(s), designed, distributed, assembled, marketed, manufactured, maintained, repaired, serviced, and/or sold the aforementioned elevator and/or its component parts, including all instruction manuals and associated warnings, which caused, at least in part, Plaintiff's injury.

48.     The accident described herein was caused solely and exclusively by Defendant's defective design and/or manufacture of the foresaid elevator and its component parts, including but not limited to:

49.     Defendant is strictly liable to Plaintiff as follows:

    a. designing, manufacturing, apparently manufacturing, assembling, licensing, distributing, and/or selling the subject elevator and its component parts in a dangerous condition so as to cause injury to the Plaintiff;

    b. designing, manufacturing, apparently manufacturing, assembling, licensing, distributing, and/or selling the subject elevator and its component parts with a defect that caused the machine to operate without adequate safety guards, resulting in two sudden drops, and failing to prevent such hazardous conditions, without adequate warning of the risk;

    c. failing to properly design, manufacture, apparently manufacture, assemble, license, distribute, and/or sell the subject elevator with durable component parts able to withstand normal use and include proper safety guards;

    d. failing to properly design, manufacture, apparently manufacture, assemble, license, distribute, and/or sell the subject elevator and its component parts to include effective and durable safeguard(s) to prevent abrupt movements, which caused Plaintiff's injuries;

    e. failing to properly equip the subject elevator and its component parts with appropriate safety mechanisms, including but not limited to automatic stop mechanisms, and/or other controls to prevent injuries during operation;

    f. failing to properly design, manufacture, apparently manufacture, assemble, license, distribute, and/or sell the subject elevator and its component parts to warn users of the potential for injury due to the absence of emergency shutoffs or other safety mechanisms;

g.  failing to properly design, license, manufacture, and/or apparently manufacture the subject elevator to prevent improper operation and access to hazardous components;

h.  creating and allowing a dangerous condition to exist by failing to provide proper safety and operational instructions to end users of its product;

i.  failing to exercise the requisite degree of care and caution in the distribution, manufacture, apparent manufacture, assembly, licensing, design, and/or sale of the subject elevator and its component parts;

j.  failing to ensure that the subject elevator was safe and free from hidden defects;

k.  failing to properly inspect, test, identify, and correct dangerous and defective conditions in the subject elevator;

l.  failing to ensure that the subject elevator and its component parts could be used in a manner which would not cause a danger to potential ordinary consumers/users of the product, such as the Plaintiff;

m.  failing to warn purchasers and end users of the dangers of the subject product;

n.  failing to take timely action to warn end consumers/users or otherwise remedy the defective design, manufacture, and/or assembly of the subject product, which should have been known to the Defendant prior to the date of Plaintiff's accident;

o.  failing to use industry-recognized safety specifications in the design and manufacture of the subject elevator;

p.  failing to design and equip the subject elevator with safeguards to prevent the foreseeable risk of improper operation or operation-related injuries;

q.  failing to design the subject elevator with consideration for operator safety, thereby placing operators at risk of injuries during operation;

r.  failing to integrate or properly integrate safety mechanisms, including physical guards and automatic shut-off features, within the system to prevent operator injuries;

s.  failing to meet industry-recognized safety standards and specifications in the design, manufacture, and assembly of the subject elevator and its component parts, including safeguards to prevent injuries;

12

t.   failing to issue warnings, recalls, or other corrective actions after becoming aware or when they should have become aware of defects in the elevator that posed a risk of injury to users;

u.   vicarious liability as an apparent manufacturer of the subject elevator and its component parts pursuant to the Restatement (Second) of Torts §400; and

v.   any other acts or omissions that may be revealed during discovery.

50.   The accident described herein was due in no manner to negligence, wrongdoing, or product misuse on the part of the Plaintiff.

51.   At all times relevant hereto, Defendants' aforesaid elevator and its component parts were defective and unsafe for consumer use.

52.   At all times relevant hereto, there were latent defects in the Defendant's aforesaid elevator and its component parts such that the product's defective condition was unknown to the consumer, therefore rendering the product unacceptable for consumer use.

53.   The Defendant designed, manufactured, apparently manufactured, distributed, licensed and/or sold the aforesaid elevator and its component parts in a defective condition in violation of the Restatement (Second) of Torts §402(A), and those defects were the sole and proximate cause of the Plaintiff's injuries.

54.   Defendant is strictly liable to Plaintiff as a result of the defective condition of Defendant's product.

55.   In addition, Defendant designed, manufactured, apparently manufactured, distributed, and sold the subject elevator with inadequate warnings and instructions in violation of the Restatement (Second) of Torts §402(B).

56.   In that regard, the warnings and instructions were not adequately durable, visible,

or conspicuous and failed to convey the risk of harm to the intended users of the elevator and its component parts, such as the Plaintiff.

57.    The inadequate warnings and/or instructions rendered the product defective, unsafe and unfit for consumer use.

58.    The inadequate and defective warnings and instructions caused Plaintiff's injuries.

59.    Furthermore, Defendant is liable and/or vicariously liable to Plaintiff as an apparent manufacturer of the subject elevator pursuant to the Restatement (Second) of Torts §400.

60.    In that regard, as set forth above, the subject elevator involved in Plaintiff's accident was embossed, affixed, and/or otherwise labeled with Defendant's name/trademark and/or symbol.

61.    Defendant labeled the subject elevator and/or allowed the subject elevator to be labeled and sold with its name and/or trademark and/or symbol which readily identified Defendant as the apparent and/or actual manufacturer of the product.

62.    As such, Defendant could reasonably expect end users and consumers to purchase the subject product in reliance upon the reputation associated with Defendant's name and Defendant put out the subject product as its own product.

63.    Defendant is therefore subject to the same liability as though it was the actual manufacturer of the subject elevator pursuant to the apparent manufacturer doctrine and Restatement (Second) of Torts §400 and is vicariously liable for causing Plaintiff's injuries and damages.

64.    By reason of the aforesaid negligence of the Defendant, Plaintiff Colleen Sagias has suffered severe and permanent injuries including, but not limited to: cervicalgia; nonunion after arthrodesis; radiculopathy in the cervical region; other spondylosis with myelopathy in the cervical region; right arm pain; acute low back pain laterality, and elevated blood pressure as well

14

as aches, pains, mental anxiety and anguish, and a severe shock to her entire nervous system. Plaintiff has in the past and will in the future undergo severe pain and suffering as a result of which she in the past and will in the future be unable to engage in her usual activities, all to her great detriment and loss.

65. As a further result of the incident described herein, Plaintiff has been or will be obliged to receive and undergo medical care and attention and to expend various sums of money and to incur various expenses for the injuries which she suffered, and she may be obliged to continue to expend such sums or incur such expenditures for an indefinite period of time in the future.

66. As a further result of the incident described herein, Plaintiff has suffered or may suffer a severe loss of her earnings and/or earning power, and she may incur such loss for an indefinite period in the future.

67. Further, by reason of the incident described herein, Plaintiff has incurred and/or may hereinafter incur other financial expenses all in an effort to treat and cure herself of the injuries sustained in the aforesaid incident.

68. As a further result of the incident described herein, Plaintiff has or may have suffered injuries resulting in the permanent loss of use of a bodily function, dismemberment, and/or scarring, which may be in full or part cosmetic disfigurements which are or may be permanent, irreparable and severe.

69. As a further result of the incident described herein, Plaintiff has suffered a loss of the enjoyment of her usual duties, avocations, life's pleasures and activities, and the shortening of her life expectancy, all to her great detriment and loss.

70.     As a further result of the incident described herein, Plaintiff has suffered great physical pain, suffering and mental anguish, all of which may continue into the future.

71.     Plaintiff in no manner contributed to her injuries which were the direct and proximate result of the Defendant's negligence and carelessness.

WHEREFORE, Plaintiff, Colleen Sagias, demands judgment in her favor and against Defendant, John Doe(s) 1-5, Fictitious Defendant(s), in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000) together with costs of suit, interest and reasonable attorneys' fees, as well as any such other relief as the Court deems adequate, just and proper.

**COUNT IV**
**COLLEEN SAGIAS v. JOHN DOE(S) 1-5, FICTITIOUS DEFENDANT(S)**
**BREACH OF WARRANTY**

72.     Plaintiff hereby incorporates all the foregoing paragraphs of the within Complaint as though the same were fully set forth at length herein.

73.     By virtue of the manufacture, apparent manufacture, licensing and/or sale of the aforesaid elevator and its component parts for use by an end user and/or consumer, Defendant warranted to Plaintiff that the subject product was safe, merchantable and fit for its intended use.

74.     The subject elevator and its component parts, in fact, was not safe, merchantable, or fit for the ordinary purposes for which it was intended to be used, in that it was defective and unreasonably dangerous, rendering it unsafe for the foreseeable uses for which it was designed.  Plaintiff was a foreseeable user of the subject product and could reasonably be expected to be injured by the subject product.

75.     As a result of the foregoing, Defendant is liable to the Plaintiff for the breach of

16

express and/or implied warranties that the subject product and its component parts were merchantable, fit for use, and suitable and fit for its particular purpose under common law and 13 Pa. Cons. Stat. §§ 2314 and 2315.

76. As a result of the aforementioned conduct of the Defendant, the Plaintiff suffered the injuries described in the foregoing paragraphs, which are incorporated by reference as though fully set forth at length.

WHEREFORE, Plaintiff, Colleen Sagias, demands judgment against Defendant, Otis Elevator Company, in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with any such other relief as the Court deems adequate, just and proper under the circumstances.

Respectfully,

**SWARTZ CULLETON FERRIS
TRIAL LAWYERS**

By: /s/Caroline Fruchter
Caroline Fruchter, Esquire
547 E. Washington Avenue
Newtown, PA 18940
cfruchter@swartzculleton.com
T: (215) 550-6553
F: (215) 550-6557

*Attorney for Plaintiff,*
Colleen Sagias

Date: August 1, 2025

## VERIFICATION

I, _____, hereby state that I am the Plaintiff in this action and

verify that the statements made in the foregoing Civil Action Complaint are true and

correct to the best of my knowledge, information and belief.   The undersigned

understands that the statements herein are made subject to the penalties of 18 Pa. C.S.

4904 relating to unsworn falsification to authorities.